[641 NYS2d 929]

In the Matter of BONNIE A. BENNETT, Respondent, v WELLS COLLEGE, Appellant. (Appeal No. 1.)

Fourth Department, April 19, 1996

**APPEARANCES OF COUNSEL**

*Bond, Schoeneck & King, L. L. P.,* Albany *(John A. Beach* and *Michael J. Grygiel* of counsel), for appellant.

*Harris Beach & Wilcox, L. L. P.,* Rochester *(William L. Doer* of counsel; *Margaret E. Somerset* on the brief), for respondent.

## OPINION OF THE COURT

GREEN, J. P.

In this appeal we are called upon to review the action of a private college in denying tenure to a faculty member. Wells College (respondent) appeals from a judgment vacating its determination denying tenure to petitioner and directing it to conduct a new tenure review in accordance with its own rules. We affirm.

Respondent is a private women's liberal arts college located in the Village of Aurora, Cayuga County. Respondent's "POLICY ON FACULTY APPOINTMENTS", adopted in 1990 and incorporated into the Faculty Manual, provides for a "core faculty" consisting of tenured and tenure-track positions. Beyond that core, appointments are made to "non-tenure track visiting and part-time positions based on enrollment and programmatic needs." In all cases, the decision whether a position is tenure-eligible must be made "at the time the position is advertised and before the actual hiring." Once a faculty member is hired to fill a tenure-track position, consideration for tenure is governed by the procedures and criteria set forth in the Faculty Manual.

In 1993, respondent created and advertised a new tenure-track position in Art History. Petitioner, a Professor of Art History at the University of Rochester for over 17 years, was offered and accepted the position of Associate Professor of Art History for the 1993-1994, 1994-1995 and 1995-1996 academic years. In recognition of her prior experience, petitioner received credit for four years of service toward tenure. As a result, her probationary period was reduced from seven years to three years and her tenure review was to take place during the second year of her appointment, the 1994-1995 academic year.

The Faculty Manual lists three substantive criteria for evaluating candidates for tenure: teaching excellence, scholarly competence and contribution to the college community. The Faculty Manual also sets forth detailed, step-by-step procedures leading to the final decision on tenure by respondent's Board of Trustees. In accordance with the provisions of the Faculty Manual, in the first step of the tenure review process the Evaluation Subcommittee measured petitioner's performance against the criteria of teaching excellence, scholarly competence and contribution to the college community. That committee, comprised of six faculty members, unanimously recommended that tenure be granted. In the next step of the process, another faculty committee, the Advisory Committee on Faculty Person-

nel, made the same recommendation based upon the same three criteria. In accordance with the procedures in the Faculty Manual, the Advisory Committee delivered its written recommendation to the Dean of the College.

Diane Koester, Interim Dean of the College, reached a conclusion at odds with the faculty committees, recommending against granting tenure to petitioner. Dean Koester advised petitioner that her negative recommendation was based, in large measure, upon declining enrollment in art history courses. The Dean also differed with the faculty committees with regard to petitioner's level of teaching excellence and contributions to the college community. Dean Koester informed petitioner that her recommendation against tenure was made "[a]fter consultation with the President and the Executive Vice President."

The Faculty Manual also provides an active role for the President of the College. The President is to make a recommendation in consultation with the Dean and the Advisory Committee. If the President's recommendation conflicts with that of the Advisory Committee, moreover, the President must explain, in writing, the reasons for his recommendation. In the process leading to the denial of tenure to petitioner, however, the participation of the President was limited to his consultation with Dean Koester. He made no recommendation with respect to petitioner's tenure and did not consult with the Advisory Committee.

Petitioner requested review of Dean Koester's negative recommendation by the Review Committee, which consisted of four faculty members. That committee objected to the Dean's recommendation based on "both procedural and substantive grounds." With respect to procedure, the Review Committee concluded that the Dean erred in considering course enrollment and in failing to consult with the appropriate faculty committees despite their strong recommendations in favor of granting tenure. With respect to the substantive criteria for tenure, the Review Committee concluded that the Dean had acted upon "arbitrarily interpreted evidence" and that she had "misrepresented the faculty member's record" in her recommendation to the Board.

In its report to the Board of Trustees, the Advisory Committee on Faculty Personnel echoed the objections of the Review Committee to the Dean's negative recommendation. In her own report to the Board, Dean Koester explained that her negative recommendation was based upon her review of petition-

er's qualifications "and on declining enrollments in [petitioner's] courses that lead to the conclusion that a second full position is not necessary in art history."

The Dean refused a request by the Advisory Committee to discuss her recommendation with it. The Faculty Manual provides, however, that, in cases in which review has been requested, the President shall make his recommendation to the Board after consultation with the Dean and the Advisory and Review Committees. The President neither consulted with those faculty committees nor made a recommendation to the Board with respect to petitioner's tenure.

In the final step of the tenure review process, the Board of Trustees acted upon the negative recommendation of Dean Koester and voted to deny tenure to petitioner. Petitioner commenced this hybrid CPLR article 78 proceeding and action at law to challenge that determination. The first cause of action seeks relief in the nature of mandamus, directing respondent to grant petitioner tenure or, alternatively, to reevaluate her in accordance with the substantive and procedural requirements of the Faculty Manual. The second and third causes of action, alleging breach of contract and fraudulent misrepresentation, seek declaratory and monetary relief. Respondent moved to dismiss the petition-complaint.

Supreme Court granted petitioner the alternative relief requested in the first cause of action, vacating the determination denying tenure and directing respondent to conduct a de novo tenure review. Based upon respondent's admission that the Dean's recommendation to refuse tenure was not reviewed independently by the President, the court concluded that respondent failed to abide by its own tenure review procedures. The court determined that, because respondent failed to implement those parts of the process calling for the active participation of the President, petitioner was entitled to a de novo review. In light of that determination, the court further concluded that "it is unnecessary at this time to pass upon the substantive issues raised by the plaintiff's complaint."

Respondent moved to renew its motion to dismiss pursuant to CPLR 2221. In support of the motion, respondent submitted the affidavit of Robert Plane, President of the College during petitioner's tenure review. In that affidavit, former President Plane asserts that he discussed with Dean Koester her decision against recommending tenure and that he supported and endorsed that decision. The court denied respondent's renewal motion.

Our analysis begins with recognition of our limited authority to review the determination of a private college whether to grant tenure to a faculty member. As a matter of public policy, the management of educational institutions belongs to professional educators and administrators who possess the "special skills and sensitivities" necessary for that task (*New York Inst. of Technology v State Div. of Human Rights*, 40 NY2d 316, 322; *Matter of Gray v Canisius Coll.*, 76 AD2d 30, 33). "One of the most sensitive functions of the university administration is the appointment, promotion and retention of the faculty. It is for this reason that the courts * * * should 'only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning' " (*New York Inst. of Technology v State Div. of Human Rights, supra*, at 322, quoting *Matter of Pace Coll. v Commission on Human Rights*, 38 NY2d 28, 38).

The decision whether to grant tenure to a particular faculty member, however, is not entirely beyond judicial scrutiny (*see, Gertler v Goodgold*, 107 AD2d 481, 486, *affd* 66 NY2d 946). Private colleges and universities, having accepted a State charter, "can be compelled in an article 78 proceeding to fulfill not only obligations imposed upon them by State or municipal statutes but also those imposed by their internal rules" (*Matter of Gray v Canisius Coll., supra*, at 33; *accord, Gertler v Goodgold, supra*, at 486). Thus, respondent is obligated to follow its own rules in the tenure review process (*see, Tedeschi v Wagner Coll.*, 49 NY2d 652, 658; *Matter of Gray v Canisius Coll., supra*, at 34) and "an appropriate inquiry may be made, not for the purpose of substituting the judgment of the court for the judgment and discretion of the respondent[ ], but to determine whether respondent['s] action in [denying tenure to petitioner] violated the college rules and was arbitrary and capricious" (*Matter of Gray v Canisius Coll., supra*, at 36).

The record supports the court's conclusion that respondent failed to follow its own procedures in conducting petitioner's tenure review. Specifically, respondent did not adhere to the process set forth in the Faculty Manual insofar as that process contemplates an active role for the President of the College. The Faculty Manual expressly provides for the President to make a recommendation to the Board of Trustees in consultation with the appropriate faculty committees as well as the Dean. No recommendation was ever made by the President, nor were the faculty committees consulted. Thus, petitioner's

tenure review lacked both the active involvement of the President and the direct communication between administration and faculty required by respondent's rules. Given those procedural infirmities in the tenure process, the court properly directed respondent to conduct a de novo review (*see, New York Inst. of Technology v State Div. of Human Rights, supra*, at 325; *Matter of Leibowitz v State Univ.*, 85 AD2d 293, 295).

We further conclude that petitioner is entitled to a de novo tenure review because respondent failed to apply its own substantive criteria in evaluating petitioner for tenure. Student enrollment, the crucial factor in the Dean's negative recommendation, is not among the enumerated criteria in the Faculty Manual. Further, consideration of student enrollment in the decision whether to grant tenure to an individual faculty member is contrary to respondent's stated policy on faculty appointments. Under that policy, which is set forth in the Faculty Manual, determination of the need for a tenure-track position is wholly independent of the decision whether to grant tenure to an individual faculty member. The Faculty Manual expressly provides that the tenure-eligibility decision shall be made "at the time of the initial appointment, not * * * at the time of the tenure decision." Thus, while enrollment may be an appropriate consideration in the decision whether to create or continue a tenure-track position, it is not an appropriate consideration in the tenure review of a particular faculty member.

We do not address respondent's challenges to the legal sufficiency of the second and third causes of action. The court addressed only the "procedural defect" in the tenure review process alleged in the first cause of action and declined to pass upon further issues raised by the petition-complaint. To the extent that the judgment reserved decision with respect to the second and third causes of action, it is not appealable (*see, Barr v Country Motor Car Group*, — AD2d —, 1995 NY Slip Op 10183 [4th Dept, Nov. 15, 1995]; *Cobb v Kittinger*, 168 AD2d 923). Finally, we conclude that the court properly denied respondent's motion to renew. Respondent offered no explanation for its failure to submit the affidavit from the President in support of its original motion (*see, Lindsay v Funtime, Inc.* [appeal No. 2], 184 AD2d 1036).

Accordingly, the judgment and order should be affirmed.

PINE, FALLON, CALLAHAN and BOEHM, JJ., concur.

Appeal from judgment, insofar as it reserved decision, unanimously dismissed and judgment affirmed, with costs.

MATTER OF BONNIE A. BENNETT, Respondent, v WELLS COLLEGE, Appellant. (Appeal No. 2.)—Order unanimously affirmed, with costs. Same opinion by Green, J. P., as in *Matter of Bennett v Wells Coll.* ([appeal No. 1], 219 AD2d 352 [decided herewith]). (Appeal from Order of Supreme Court, Cayuga County, Contiguglia, J.—Renewal.) Present—GREEN, J. P., PINE, FALLON, CALLAHAN and BOEHM, JJ.