=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 28
In the Matter of David Powers,
          Appellant,
        v.
St. John's University School of
Law,
          Respondent.

Roland R. Acevedo, for appellant.
Michael J. Keane, for respondent.
Community Service Society of New York et al., amici
curiae.

ABDUS-SALAAM, J.:

This proceeding pursuant to CPLR article 78 challenges a
determination of St. John's University School of Law to rescind
petitioner David Powers's admission, after he had completed three
semesters of law school as a part-time student, based on material
misrepresentations and omissions in his application regarding his
criminal history.  We agree with the Appellate Division that this

- 1 -

determination "was not arbitrary and capricious, and does not warrant judicial intervention" (110 AD3d 888,889 [2013]).

                                    I.

     In November 2005, Powers submitted an application to St. John's University School of Law to become a part-time law student.  The application included the following question:

> "Have you ever been charged with, pleaded guilty to, or been found guilty of any crime, offense, or violation (other than a minor traffic violation), or is any such action pending or expected to be brought against you?
> If yes, please explain in a supplementary statement or electronic attachment the relevant facts, including the nature of the offense, the dates and courts involved, and the penalty imposed, if any. *Note: Although a conviction may have been sealed or expunged from the record by an order of the court, it nevertheless should be disclosed in answer to this question.*"

Powers answered the question "Yes" and submitted a three-page "Background Disclosure" in which he stated, among other things, that he was "not proud to admit that [he had] used drugs," that in July of 1999 "[he] remembered being pulled over by the police shortly after a drug deal," and that "[a]fter about a year, the case proceeded and [he] accepted a plea bargain to attend an inpatient rehabilitation program and complete probation."  He stated that he was convicted of "third degree possession of a controlled dangerous substance."  Powers did not, as required by the application, explain all of the relevant facts or the "nature of the offenses" for which he was charged.  He had in fact been

charged in the State of New Jersey with distribution of LSD, second degree; possession of LSD with intent to distribute, second degree; possession of drug paraphernalia; possession of MDMA (colloquially known as Ecstasy), third degree; possession of MDMA with intent to distribute; possession of LSD, third degree, and possession of a controlled dangerous substance in a motor vehicle.

Further, Powers did not accurately represent his convictions. He stated that he had been convicted of third degree possession of a controlled dangerous substance, while in fact, he had pleaded guilty to second degree distribution of LSD, and second degree possession of LSD with intent to distribute. The plea included an agreement that if defendant entered and successfully completed an inpatient program of at least nine months including any aftercare treatment, the State would consent to the defendant withdrawing his plea and entering a guilty plea to possession with intent to distribute in the third degree, as amended, where the recommended sentence would be probation and credit for time served in the inpatient program. The record shows that defendant did in fact withdraw his plea and enter a guilty plea to possession with intent to distribute in the third degree. That is not a guilty plea to third degree possession of a controlled substance, as Powers had reported in his

application.[1]

The omissions and misrepresentations first came to the attention of the law school after Powers had completed three semesters as a part-time student, and while he was on a leave of absence and working in Hong Kong. In September 2008, he wrote to the Senior Assistant Dean for Students, Kathleen Sullivan, stating that he intended to petition the Committee on Character and Fitness for an advance ruling with respect to his past conduct and his fitness to be admitted to the New York bar, and he requested a letter of support from the law school. Powers subsequently sent Dean Sullivan a draft of his letter to the Committee on Character and Fitness, which stated, among other things, that he had used drugs habitually from age 16 to 21, that he "sometimes would sell drugs to others" and that in July 2001, he had been arrested for "distribution of LSD to an undercover officer and possession of Ecstasy." The Dean responded to Powers that the information he had provided to the Committee on Character and Fitness was not included in his application to the law school, and that accordingly, the law school would not be providing him with a letter of support.

In November 2009, Powers applied for an extension of his leave of absence to Spring 2011, which was granted. In July 2010, Powers requested from the law school a letter of good

---

[1]The records of Powers's arrest and convictions were expunged by order of the Superior Court of New Jersey, Morris County, dated October 27, 2005.

standing so that he could apply for a semester abroad in Tokyo. At that point, Dean Sullivan sought guidance from other senior administrators, including then Assistant Dean for Students-Designate Larry Cunningham. It was decided that the law school would not provide the letter, and that, because it was apparent that Powers intended to pursue his legal career, the law school would start the process that it uses with respect to misrepresentations and omissions on applications.

The school advised Powers that in order to continue at the school, he must seek to amend his application, including a full accounting of the criminal activity at issue and an explanation of why he had not disclosed it in his initial application. Powers was informed that upon receipt of the materials, the law school would determine whether the non-disclosure and underlying criminal activity warranted disciplinary action, which could include rescission of his admission to the school.

Powers responded in June 2010 by providing, among other things, a copy of his presentence report which showed the charges against him and his convictions pursuant to his plea. He had not included that report with his original application. He stated that he had consulted counsel about what he should disclose on his law school application, and that he did not see any need to amend the application because he considered the statement in his application to be adequate. He wrote that he would be in New York in July and available for a meeting.

In July 2010, Powers met with Dean Sullivan, Associate Academic Dean and Professor of Law Valentine Turano, Vice Dean Emeritus Andrew Simons and Dean Cunningham.  He was given an opportunity to explain his actions and was told he could submit a written request to amend his law school application.  Powers wrote to Dean Cunningham and stated, among other things, that he had looked over the statement that accompanied his application "and would like to reaffirm that there is nothing in the statement which is factually incorrect or needs to be amended. The statement addresses relevant facts, the nature of the offense, dates and the penalty imposed."  He also wrote that the presentence report clearly showed the original charges as well as the final charges and the charges that the State consented to upon his completion of a rehabilitation program.  He noted that he had completed the program as required and that the State had consented to a new guilty plea of possession with intent to distribute in the third degree.  He explained that although he was arrested for distribution, that was not something he did with regularity.

In September 2010, the law school notified Powers that his application contained material omissions and misrepresentations involving criminal charges brought against him, that he had subsequently advised the school that he had been charged with distribution of LSD and Ecstasy, and that the law school was rescinding his admission.

II.

Courts have a "restricted role" in reviewing determinations of colleges and universities (Maas v Cornell University, 94 NY2d 87, 92 [1999][internal quotation and citation omitted]). A determination will not be disturbed unless a school acts arbitrarily and not in the exercise of its honest discretion, it fails to abide by its own rules (Matter of Harris v Trustees of Columbia Univ., 62 NY2d 956, 959 [1983] revg for reasons stated in dissenting op of Kassal, J. 98 AD2d 58, 67-73) or imposes a penalty so excessive that it shocks one's sense of fairness (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 234 [1974]). None of those factors is present here.

The law school's treatment of Powers was rational insofar as it was not wholly inconsistent with the school's approach to rescission of admission in general. The law school states that while it routinely receives, and often grants, requests from enrolled students to amend the criminal history sections of their applications, such amendments usually involve minor offenses such as open container or traffic violations, or small quantity marijuana possession. Amendments are by no means guaranteed - - the law school states that on at least two occasions, when the information contained in the subsequent disclosure would have prevented the individual from being considered for admission, the students' admission was rescinded.

The law school avers that it has an unwritten policy of not admitting people who sell drugs and that if Powers had disclosed on his application that his arrest was for the distribution of LSD to an undercover officer and possession with intent to distribute, his application would have been denied during the initial screening process.  The school explains that it generally distinguishes between applicants with a history of personal drug use, and those with a history of drug dealing - - the former can be accepted under certain circumstances, but the latter are not. That is not an irrational policy and certainly within the exercise of the law school's honest discretion.  While Powers questions whether there is such a policy because it is not memorialized in writing, it is not necessary that the policy be in writing for the school to apply the policy.  It would be untenable for courts to require that every factor that is taken into consideration during the admission process be reduced to writing.  Further, the law school's response to Powers's belated disclosure was not arbitrary or capricious, given that Powers was on notice, based on the electronic certification that he submitted with his application, that the failure to provide truthful answers to the questions could result in denial of admission, dismissal, or rescission of an awarded degree from the school.

Additionally, the law school did not fail to follow its own rules and procedures.  Powers was not, as he contends, entitled

to the grievance procedure set forth in the student handbook.
The handbook states that it "is concerned specifically with the
conduct of students with respect to academic and related
matters."  The handbook has sections that deal with school work,
attendance, and examinations.  Thus, it is clear that the
grievance procedure does not apply to conduct of students that is
unrelated to academic and related matters, or unrelated to
conduct of students when they are enrolled (i.e., conduct
connected to the application process)(see Matter of Mitchell v
New York Med. Coll., 208 AD2d 929, 930 [2d Dept 1994][medical
student not entitled to a formal hearing pursuant to a student
handbook before being dismissed for a misrepresentation he made
in the admission process because the section of the handbook upon
which he relied was clearly aimed at misconduct committed by an
individual while a student at the school, not fraudulent acts
committed prior to admission]).  Notably, while the law school
did not apply the formal grievance procedure, it did give Powers
a chance to amend his application and explain the
misrepresentations and omissions in writing, in addition to
affording him an opportunity to meet with school administrators
to explain his actions.

Finally, the penalty was not so "disproportionate to the
misconduct" (Pell, 34 NY2d at 234) as to be shocking to one's
sense of fairness.  The law school application made it clear that
dire consequences could result if there was a failure to provide

truthful answers.  Thus, Powers was on notice of the potential repercussions should he fail to truthfully and fully disclose his record.  Given this notice and the school's unquestionable interest in ensuring the integrity of the future attorneys under its tutelage, the penalty of rescission was not excessive.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question should not be answered as unnecessary.

In the Matter of David Powers v St. John's University School of Law

No. 28

PIGOTT, J.(dissenting):

David Powers has accomplished a significant amount since his (now expunged) conviction. After successfully completing an in-house drug treatment program, he graduated summa cum laude with a Bachelor of Science degree in accounting and obtained a Masters in Science degree in taxation. He is currently a certified public accountant at a well-recognized accounting firm, which hired Powers notwithstanding his prior conviction. St. John's University School of Law is apparently not as forgiving.

I respectfully dissent because, in my view, St. John's failed to demonstrate with admissible proof that, had it known in 2005 that Powers had been convicted of a "distribution" offense as opposed to a personal use offense (which is what Powers led the school to infer on his application), it would have denied his admission. The only indication that this was St. John's "policy" back in 2005 was a hearsay statement contained in the only affidavit submitted by a St. John's representative, Assistant Dean for Students, Larry Cunningham, who was apprised of that "policy" by one Robert Harrison, Assistant Dean for Admissions and Student Financial Services. Although Dean Harrison may have

- 1 -

conveyed to Dean Cunningham that had St. John's known that Powers had been convicted of a distribution offense it would have rejected Powers's application "out of hand and would not have been submitted to the Committee on Admissions for review and consideration," there is no affidavit from a St. John's representative who had personal knowledge that that was, in fact, St. Johns's policy when Powers applied in 2005. Whether that was, in fact, St. John's policy is crucial to the determination of this proceeding.

I also disagree with the imposition of this particular penalty -- rescission of Powers's three semesters worth of credit. Ironically, the only reason the nature of Powers's conviction was disclosed was because Powers requested a letter from St. John's in support of his application for an advanced ruling from the Appellate Division concerning whether he would be admitted to the New York bar in light of his prior conviction, thereby demonstrating his clear goal of becoming an attorney. Given that Powers had obtained three semesters worth of credit and presumably paid tuition to attend, rescission of Powers's application is, in my view, too harsh a penalty for the alleged infraction.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs, and certified question not answered as unnecessary. Opinion by Judge Abdus-Salaam. Chief Judge Lippman and Judges Read, Stein and Fahey concur. Judge Pigott dissents in an opinion. Judge Rivera took no part.

Decided April 2, 2015