■ In the Matter of PATRICIA E. CHU, Appellant, v ROBERT J. JONES, as President of the State University of New York at Albany, et al., Respondents. [58 NYS3d 184]—

Mulvey, J. Appeal from a judgment of the Supreme Court (Zwack, J.), entered February 4, 2016 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Robert J. Jones denying petitioner tenure and promotion.

In 2007, petitioner was appointed an assistant professor of English at the University at Albany (hereinafter the University) which is part of respondent State University of New York. This initial two-year appointment was renewed twice. Petitioner applied for tenure and promotion to the position of associate professor during the 2012-2013 tenure review cycle. In May 2014, following a multi-level review process, tenure and promotion were denied by respondent Robert J. Jones, then the President of the University. After further review by respondent Nancy L. Zimpher, the Chancellor of the State University of New York, the determination was affirmed in May 2015. Petitioner commenced this proceeding in September 2015, seeking annulment of the determination on the ground that it was arbitrary and capricious. In a thorough and well-reasoned decision, Supreme Court dismissed the petition. Petitioner appeals.

We affirm. "[A]dministrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters" (*Maas v Cornell Univ.*, 94 NY2d 87, 92 [1999]). Further, it is well established that "courts are extremely reluctant to invade or sanction invasion of the province of academic authorities in making tenure decisions" (*Matter of Leibowitz v State Univ. of N.Y.*, 85 AD2d 293, 295 [1982]), and that a reviewing court should not substitute its judgment for that of a university (*see Matter of Dalmolen v Elmira Coll.*, 279 AD2d 929, 932 [2001]). Our examination of the record confirms that Supreme Court gave appropriate deference to respondents' discretion in concluding that the denial of tenure and promotion had a rational basis, and that it correctly found that petitioner failed to establish any substantial departures from respondents' procedures in their review of petitioner's application.

Petitioner's application for tenure and promotion was first evaluated by the Department of English, which unanimously recommended approval after reviewing evaluations from eight external reviewers. The matter was next considered by the Chair of the Department, who issued a favorable recommendation. Thereafter, the University's College of Arts and Sciences

Tenure and Promotion Committee (by a divided vote of 3-2) recommended approval. An Associate Dean, on behalf of the dean of the College of Arts and Sciences, recommended against approval. The matter was then considered by a council on promotion and continuing appointment, which recommended disapproval by a vote of 6-2. The University Provost considered the application and recommended disapproval. The President then reviewed the matter and denied the application. Petitioner invoked a review procedure available under a collective bargaining agreement in which she requested that the President inform her of the reasons for denial. He did so, and petitioner requested review by the Chancellor, who formed an advisory committee. Although the advisory committee recommended approval by a vote of 2-1, the Chancellor affirmed the denial of petitioner's application.

The President's determination was based on petitioner's lack of scholarly productivity from the time of her appointment in 2007, specifically characterized by the President as "the poor production of published research and sustained scholarly progress." Tenure criteria adopted by the University states that, "primary emphasis will be placed upon the major areas of scholarship, teaching . . . and service. For this purpose[,] scholarship is broadly defined as original scholarly contributions or artistic works which constitute significant advances or major contributions to the individual's discipline or to practice in the field and which serve as a basis for major professional awards or distinctions in the discipline." The record does not reveal any significant concerns about petitioner's teaching, service record or the quality of her scholarship, yet it does support the President's conclusion as to the quantity of her scholarly contributions. Although petitioner published a well-received book in 2006, prior to her appointment, her scholarly contributions in the seven years at the University were limited to three journal articles, three book reviews and five conference presentations, as well as several items that consisted of chapters of an unfinished book. This production was weighed against that of other tenure-track appointees, noting that petitioner's output lagged despite having the benefit of a "writing semester" in which her teaching load was eliminated. Ultimately, it was concluded that petitioner's efforts did not reflect the level of achievement expected for the faculty of a national public research university.

Since this conclusion has a foundation in the record, petitioner has failed to meet her heavy burden to demonstrate that it is arbitrary and capricious (*see Matter of Pell v Board of*

*Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). Petitioner received a great deal of support during the review process from colleagues and independent sources. Nevertheless, we cannot ignore the significance of the many countervailing opinions and concerns relied upon by respondents. Even if a majority of individuals involved in the multi-level review process expressed favorable opinions of her application, a contrary determination may nevertheless be considered to have a rational basis (*see Matter of Loebl v New York Univ.*, 255 AD2d 257, 259 [1998]). Deciding how much weight to give to varying views "in this scholarly debate is an academic issue that should not be decided by the courts" (*id.* at 260).

The balance of petitioner's argument is that respondents failed to comply with the University's tenure review procedures and that denial of tenure was founded upon a pretext or bad faith motive. We have examined petitioner's claims regarding procedural violations and conclude that "there was [no] substantial procedural defect in the way the [review] was conducted" (*id.* at 259), yet we will briefly address them here. Petitioner first contends that she was entitled to greater credit for her previously published book, arguing that such credit was promised in a memorandum of understanding executed by the Department Chair at the time of her initial appointment in 2007. We do not view the memorandum as a limitation on respondents' discretion, since it merely recognized petitioner's prior scholarly achievements in suggesting that she seek tenure and promotion by the fourth year of service, two years ahead of schedule. Nor does the "[o]ne book" rule referred to in the English Department's "Criteria for Tenure and Promotion" bind respondents' assessment of petitioner's productivity, since the remainder of the criteria clearly requires a tenure candidate to make "a distinct and substantial contribution to the discipline" and suggests ways in which that can be accomplished.

Finally, petitioner's contention that one of the University officials had an underlying motive that tainted the process is not borne out by the record. We find ample support in the record for respondents' concerns regarding petitioner's productivity over her seven years at the University, and the record does not furnish any basis to ascribe the negative recommendations by multiple advisers, panel members and University officials to any form of manipulation.

Garry, J.P., Lynch, Rose and Aarons, JJ., concur. Ordered that the judgment is affirmed, without costs.