Matter of Vengalattore v Cornell Univ. (2018 NY Slip Op 03409)





Matter of Vengalattore v Cornell Univ.


2018 NY Slip Op 03409


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

525492

[*1]In the Matter of MUKUND VENGALATTORE, Respondent,
v
CORNELL UNIVERSITY et al., Appellants.

Calendar Date: March 30, 2018

Before: McCarthy, J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Ward Greenberg Heller & Reidy LLP, Rochester (Thomas S. D'Antonio of counsel), and Nelson E. Roth, Office of University Counsel, Ithaca, for appellants.
McLaughlin & Stern, LLP, New York City (Alan E. Sash of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Rich Jr., J.), entered December 6, 2016 in Schuyler County, which, among other things, partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondents denying petitioner tenure and promotion.
In 2009, petitioner commenced a three-year term as an assistant professor in the physics department at respondent Cornell University (hereinafter the University). After this initial term was renewed, petitioner sought a promotion to associate professor with tenure, and a department committee was formed to review petitioner's application. In May 2014, prior to
the vote of the department committee, one of petitioner's former graduate students submitted a letter accusing petitioner of throwing a power supply at her and improperly denying her authorship on a paper. As part of the tenure review process, a professor solicited opinions from petitioner's students about petitioner, and his findings revealed both positive and negative experiences by them. With respect to the criticisms, it was noted that there was poor communication between petitioner and his students and that some students found petitioner to be belittling and unprofessional. In September 2014, the department committee ultimately recommended a grant of tenure. The department committee noted in its written recommendation that, although there was a troubling theme that petitioner denigrated students and that it had discounted, but did not ignore, what the graduate student had alleged in the May 2014 letter, petitioner desired to improve on any identified deficiencies and had "demonstrated extraordinary technical skills" and an ability to teach at a high level. Shortly after this recommendation, the graduate student advised a professor in the physics department via email that she was sexually [*2]assaulted by petitioner and that they engaged in a sexual relationship.
An ad hoc committee was subsequently appointed by respondent Gretchen Ritter, the Dean of the University's College of Arts and Sciences, to review the tenure dossier and provide her with a recommendation. In October 2014, the ad hoc committee unanimously recommended against granting tenure. Ritter decided to deny tenure, and she thereafter shared her preliminary decision with petitioner. Nevertheless, the physics department requested, and was granted, additional time to conduct a study of the environment in petitioner's laboratory based upon issues raised in the tenure dossier. Following this review and after Ritter received a positive recommendation from a professor who previously worked in the University's physics department, Ritter, in December 2014, nonetheless affirmed her preliminary decision to deny tenure.
In accordance with the University's review process, the tenure dossier and Ritter's decision were forwarded to the University Interim Provost, who referred the matter to the Faculty Advisory Committee on Tenure Appointment. This committee voted to deny tenure to petitioner. The Interim Provost, who agreed with the Faculty Advisory Committee's recommendation, thereafter returned the matter to Ritter for final review. In February 2015, Ritter advised petitioner that she was affirming her decision to deny his promotion request to associate professor with tenure.
Petitioner then appealed to the University's appeals committee arguing, among other things, that the review of his tenure dossier was "substantially influenced by improper and unprofessional consideration of factors." The appeals committee agreed with petitioner on this point and noted that the May 2014 letter from the graduate student should not have been considered as part of the tenure review process given the conflict of interest posed by her relationship with petitioner and her allegations of sexual misconduct. As a consequence, Ritter redacted the information from the graduate student and convened a new ad hoc committee. The new ad hoc committee reviewed the redacted tenure dossier and, in February 2016, recommended granting tenure to petitioner. Notwithstanding such recommendation, Ritter affirmed her decision denying petitioner tenure. The chairperson of the appeals committee then wrote to the acting dean of the faculty and recommended that he implement a procedure set forth in the University's faculty handbook providing for the appointment of a "panel of professionally qualified and not previously involved expert scholars from inside or outside [of the University]" to review petitioner's case. The acting dean declined to do so and, instead, the redacted tenure dossier was given to the University Provost for his review and so that he could make a final tenure determination. In May 2016, the Provost accepted Ritter's negative tenure determination.
In June 2016, petitioner commenced this CPLR article 78 proceeding seeking, among other things, a de novo tenure review. After respondents joined issue, Supreme Court partially granted the petition by annulling respondents' tenure determination and ordering a de novo tenure review and, as part of such review, directing that respondents reopen the tenure dossier for further submissions. In so doing, Supreme Court reasoned that the University did not follow its own procedures. Respondents now appeal.
"One of the most sensitive functions of [a] university administration is the appointment, promotion and retention of the faculty" (New York Inst. of Tech. v State Div. of Human Rights, 40 NY2d 316, 322 [1976]). "[I]t is well established that courts are extremely reluctant to invade or sanction invasion of the province of academic authorities in making tenure decisions, and that a reviewing court should not substitute its judgment for that of a university" (Matter of Chu v Jones, 151 AD3d 1341, 1342 [2017] [internal quotation marks and citation omitted], lv denied ___ NY3d ___ [Apr. 3, 2018]; see generally Maas v Cornell Univ., 94 NY2d 87, 92 [1999]). [*3]Deference should be accorded to a university's discretion in making tenure decisions, and judicial review is circumscribed to whether the university failed to substantially comply with its internal rules and whether its decision was arbitrary or capricious or made in bad faith (see Tedeschi v Wagner Coll., 49 NY2d 652, 658, 660 [1980]; Gertler v Goodgold, 107 AD2d 481, 486-487 [1985], affd 66 NY2d 946 [1985]; Matter of Leibowitz v State Univ. of N.Y., 85 AD2d 293, 295 [1982]).
Contrary to Supreme Court's determination, there was no requirement under the University's rules and procedures that petitioner be advised of alleged deficiencies in his teaching style. As such, the University was not required to notify petitioner of the criticisms offered by his students so as to allow him to take corrective action. In any event, petitioner's written submission to the appeals committee addressed any complaints regarding his teaching and mentoring of students.
Petitioner also takes issue with the procedure employed once the appeals committee determined that information — specifically, the graduate student's May 2014 letter — was improperly considered as part of the tenure review process. In view of the appeals committee's determination, under the applicable rules, Ritter was required to "take appropriate action to correct the deficiencies that the [appeals committee] ha[d] found." Ritter's corrective action consisted of removing the May 2014 letter from the tenure dossier and redacting any related material. Noting that the appeals committee did not give any specific direction to Ritter as to how to correct the deficiency identified by the committee, we find that Ritter's corrective action substantially complied with the University's rules (see Gurstein v Bard Coll., 280 AD2d 264, 264 [2001]; Matter of Dalmolen v Elmira Coll., 279 AD2d 929, 934 [2001]).
We further discern no substantial deviation from the University's rules when the acting dean referred the matter to the Provost for a final determination instead of appointing an independent panel of scholars as requested by the appeals committee. Because Ritter confirmed her earlier decision to deny tenure following the recommendation given by the new ad hoc committee, under the rules, the appeals committee had the option of either concluding the appeals process or recommending the appointment of an independent panel of scholars to review petitioner's case because of a continuing deficiency. The chairperson of the appeals committee wrote to the acting dean requesting the latter of those options. The acting dean was concerned in appointing an independent panel to conduct the second independent review given the rule providing that the independent panel "shall be entitled to all of the evidence on which the original substantive decision was based." As the acting dean noted, the independent panel could not be provided with all of the evidence on which the original decision was based because such evidence included the May 2014 letter from the graduate student — i.e., information that the appeals committee determined should not have been considered.
Moreover, the impetus for the appeals committee's recommendation for an independent panel was not because Ritter's corrective action was unsatisfactory. Indeed, the record evidence confirms that the appeals committee had no issue with Ritter's corrective action. Rather, the appeals committee identified a wholly new deficiency — the lack of a second negative determination. Although the appeals committee believed a second negative determination was required before a tenure case could be closed, such perception was based upon language provided in a draft policy. More critically, the requirement of a second negative determination was never adopted by the University as final policy. Accordingly, the new deficiency identified by the appeals committee was not a basis to convene an independent panel. Nevertheless, in light of the appeals committee's request for a second independent review, the acting dean forwarded the matter to the Provost, who had just assumed office in August 2015 and had no prior role in the [*4]tenure review or appeals process, to conduct the second review and make a final decision. We further note that, under the rules, the independent panel acted in an advisory role inasmuch as it merely gave a recommendation to the Provost, who would make the final decision. Based on the foregoing, we conclude that the acting dean's decision to have the Provost render a final decision based upon the redacted tenure dossier substantially complied with the University's rules (see Matter of Berkeley-Caines v St. John Fisher Coll., 11 AD3d 895, 896-897 [2004]; compare Matter of Bennett v Wells Coll., 219 AD2d 352, 356-357 [1996]).
Nor do we find that the decision to deny tenure to petitioner was arbitrary and capricious or made in bad faith. The record evidence reveals both positive and negative opinions from an array of reviewers concerning petitioner's scholarly work, laboratory management and tutelage of students. Throughout the multilevel review process, it was noted that whether to grant tenure to petitioner was a difficult case. Furthermore, Ritter stated that her decision was made without consideration to the relationship between petitioner and the graduate student. Likewise the Provost's determination was based upon a review of the redacted tenure dossier.
We also find, unlike Supreme Court, that neither the sexual misconduct allegations raised by the graduate student nor her May 2014 letter improperly influenced the tenure decision. Although the alleged misconduct may have been discussed at certain junctures of the tenure review process, the record evidence indicates that such allegations did not factor into the final tenure decision. Nor does the record support the conclusion that the May 2014 letter improperly influenced the final decision inasmuch as it was removed from the tenure dossier. We also note that the tenure dossier contained criticisms from other graduate students taking issue with petitioner's teaching style and his management of his laboratory and, therefore, the May 2014 letter was not the sole source of any negative perceptions about petitioner.
In sum, given that an academic institution's decision regarding tenure is accorded deference, Supreme Court erred in annulling the University's determination to deny petitioner tenure (see Matter of Chu v Jones, 151 AD3d at 1343-1344; Matter of Loebl v New York Univ., 255 AD2d 257, 259-260 [1998]). In light of our determination, the parties' remaining contentions are academic.
McCarthy, J.P., Clark, Mulvey and Rumsey, JJ., concur.
ORDERED that the judgment is modified, on the law, with costs to respondents, by reversing so much thereof as partially granted the petition; petition dismissed in its entirety; and, as so modified, affirmed.