Matter of Storino v New York Univ. (2021 NY Slip Op 02087)





Matter of Storino v New York Univ.


2021 NY Slip Op 02087


Decided on April 01, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 01, 2021

Before: Gische, J.P., Moulton, González, Scarpulla, JJ.


Index No. 157947/20, 157815/20, 157787/20 Appeal No. 13131-13132&[M-4134] Case No. 2020-04294(2) 

[*1]In the Matter of Ashley Storino et al., Petitioners-Respondents-Appellants,
v
New York University, Respondent-Appellant-Respondent. Foundation for Individual Rights in Education, amicus curiae. 


Hogan Lovells US LLP, New York (Ira M. Feinberg of counsel), for appellant-respondent.
Price, Meese, Shulman & D'Arminio, P.C., White Plains (Jacqueline E. Esposito and Karen F. Edler of the bar of the State of New Jersey, admitted pro hac vice, of counsel), for respondents-appellants.
Foundation for Individualized Rights in Education, Washington DC (Darpana M. Sheth and Katlyn Patton of counsel), for amicus curiae.



Order and judgment (one paper), Supreme Court, New York County (Carol R. Edmead, J.), entered October 21, 2020, which granted the CPLR article 78 petitions to the extent of declaring that New York University's (NYU or the University) suspensions of petitioners for the fall 2020 semester were arbitrary, capricious, and an abuse of discretion, annulling said suspensions, directing NYU to remove the suspensions from petitioners' records, and directing NYU to permit petitioners to complete the fall 2020 semester, and denied petitioners' request for attorneys' fees, unanimously reversed, on the law, to deny the petitions and to vacate the declaration, without costs.
For the reasons set forth below, we find that NYU's determination to suspend petitioners was not arbitrary and capricious and was made in the exercise of honest discretion. Petitioners had notice that the gatherings they attended in August 2020 could result in disciplinary action by NYU. As a consequence, petitioners' cross appeal for attorney's fees is moot.
All students at NYU are subject and required to comply with NYU's Student Conduct Policy (Policy) as a condition of enrollment. The Policy generally provides, under Section I, that it serves as the basis for disciplinary action for misconduct, whether the misconduct occurs within or outside NYU's premises. Under Section III, the Policy prohibits specific types of non academic misconduct, and in particular prohibits conduct by students which poses a danger to the health and safety of the University's community. The relevant sections of the Policy in question are as follows:
"University Student Conduct Policy/B1: Engaging in or threatening to engage in behavior(s) that, by virtue of their intensity, repetitiveness, or otherwise, endanger or compromise the health, safety or well-being of oneself, another person, or the general University community."
"University Student Conduct Policy/E1: Disorderly, disruptive, or antagonizing behavior that interferes with the safety, security, health or welfare of the community, and/or the regular operation of the University."
Under Section IV, the Policy states that NYU reserves the right to "take student disciplinary action for conduct occurring outside the University context which substantially disrupts the regular operation of the University or threatens the health, safety, or security of the University community."
The petitioners in this case, Marc Santonocito, Ashley Storino, and Elnaz Pourasgari, were each found to have violated the above policies because of off-campus gatherings they attended during August 2020 in the weeks leading up to the start of the fall semester. The main issue on this appeal is whether petitioners had notice prior to their conduct that attending these gatherings could result in discipline. On August 12 and 14, 2020, Santonocito attended two gatherings of between 10 to 13 people, held indoors in a private apartment and partly on the apartment's private rooftop. No one [*2]at either gathering masked or social distanced. On August 12, 2020, Storino attended a party with 12 or 13 people indoors at an off-campus apartment and on August 14, 2020, she hosted a party with 10 to 12 guests on the private roof of her apartment building. No one wore a mask or social distanced at either gathering. On August 22, 2020, Pourasgari attended a gathering with up to 15 guests at a friend's off-campus apartment rooftop. No one at the gathering masked or social distanced. Each petitioner was captured in at least one photo on social media depicting them unmasked and in physical contact with other individuals who were also not wearing masks: Santonocito arm in arm with other unmasked individuals, Storino cheek to cheek with other unmasked individuals, and Pourasgari touching the face of another unmasked individual.
Petitioners were each notified via email that the Office of Student Conduct had received reports that they had attended parties during the month of August without the proper use of masks and social distancing. Petitioners attended virtual individual conduct conferences at which all three admitted to attending the gatherings in question and admitted to not wearing a mask or social distancing at the gatherings. The Office of Student Conduct determined that each petitioner had violated sections B1 and E1 of the Policy, and each was suspended for the fall 2020 semester, among other disciplinary sanctions. Petitioners individually appealed the decisions pursuant to the procedure set forth in the Policy, and the Dean of each petitioner's school denied the appeals and upheld the disciplinary sanctions. These article 78 proceedings followed.
The crux of petitioners' article 78 petitions was that neither the Policy nor any of the emails sent by NYU in the months of July and August provided them with pre-conduct notice that their off-campus behavior in the weeks leading up to the start of the semester could result in discipline. The article 78 court granted their petitions and found that when a sanction as pejorative as suspension is imposed, students must be provided with "clear, unambiguous and full pre-conduct notice" that the behavior in question could result in discipline. There is no authority, however, which requires a private university to meet such a heightened notice standard, and in light of the limited role courts play in reviewing the disciplinary determinations of private universities, we decline to require it now.
Courts retain a restricted role in reviewing the determinations of private universities (Matter of Powers v St. John's Univ. School of Law, 25 NY3d 210, 216 [2015]). A disciplinary determination will only be disturbed when the university acts arbitrarily and not in the exercise of its honest discretion, when it fails to abide by its own rules, or when the penalty is so excessive that one's sense of fairness is shocked (id.). Students at private universities are not afforded a full panoply of due process rights [*3]unless a threshold showing of State involvement is made, a contention not argued by petitioners here (Matter of Bondalapati v Columbia Univ., 170 AD3d 489, 490 [1st Dept 2019]; see Cavanaugh v Cathedral Preparatory Seminary, 284 AD2d 360, 361 [2d Dept 2001]). This restricted review applies no matter what stage of the disciplinary process is being challenged. We find that none of the Powers factors are present in this case.
Petitioners argue that they did not have any pre-conduct notice that their behavior was prohibited under the Policy. Petitioners note that during August 2020, New York had relaxed its COVID-19 safety regulations. Petitioners argue that because they were following all New York State and City regulations in effect at the time of the gatherings in question, including those regulations which allowed for gatherings of up to 50 people, they could not anticipate discipline for gatherings that otherwise complied with the relevant laws. However, the Executive Order allowing gatherings of up to 50 people contains the important caveat: "provided further that social distancing, face covering, and cleaning and disinfecting protocols . . . are adhered to" (New York State Executive Orders 202.45 and 202.53). Petitioners admit they did not follow these protocols. The text of the regulations petitioners put forth to justify their behavior demonstrates that petitioners should have been aware that they were required, by the very Executive Order they claim exculpates them, to mask and social distance at the gatherings they attended. Thus, given their violation of the Executive Order, petitioners could have reasonably anticipated discipline for their conduct which put the University's congregant student community at risk. Petitioners' violation of the mask and social distancing requirements of the Executive Orders is further evidence that it was rational for NYU to interpret its own Policy to include prohibition of the conduct at issue. NYU's Policy, specifically sections B1 and E1, made clear that conduct, even off-campus conduct, which could endanger the health or safety of the University community, could result in discipline. By themselves, these broad policies can rationally be interpreted to allow for discipline of students who threaten the health and safety of the University's community by attending unmasked and non socially distanced gatherings in the weeks leading up to the start of the semester (see Matter of Lambert v Fordham Univ., 281 AD2d 182, 183 [1st Dept 2001] [determination to suspend was rationally based on a reasonable interpretation of the rule prohibiting "other conduct which threatens or endangers the health or safety of any person"]). Although the Policy is written broadly, it is unrealistic to require a university to enumerate every example of unsafe conduct which falls under a written policy in order to enforce the policy (see Powers, 25 NY3d at 217). In Powers, the Court of Appeals held that enforcing an unwritten policy [*4]concerning admissions was neither arbitrary nor capricious. In so holding, the Court said, "it is not necessary that the policy be in writing for the school to apply the policy. It would be untenable for courts to require that every factor that is taken into consideration . . . be reduced to writing" (id. at 217; see also Matter of Kamila v Cornell Univ., 182 AD3d 692, 692 [3d Dept 2020]). Similarly, NYU was not required to have detailed written policies regarding COVID-19 as it grappled with keeping its educational community safe.Given the highly transmissible nature of COVID-19, the widely known health risks of maskless gatherings, the highly publicized shut down of colleges and universities in New York and around the country in August 2020 due to COVID-19 outbreaks, and New York City's own history of the virus running rampant, petitioners could have reasonably expected discipline for the conduct at issue here. We find that the Policy and the attendant widely known contemporaneous societal circumstances provided sufficient pre-conduct notice that such behavior might result in disciplinary action.
Petitioners argument that they did not have pre-conduct notice is further contradicted by communications they received from NYU. Prior to the gatherings in question, NYU had sent emails to its students regarding safety procedures related to COVID-19. These emails reflect NYU's concern over COVID-19 spreading through the congregant university community and convey the seriousness with which NYU was approaching the threat. NYU notified students via email on July 30, 2020 of certain requirements. While many of those requirements concerned out of state students, still others also applied to in-state students. Students were notified that anyone intending to access the NYU campus at the start of the semester would have to provide a negative COVID-19 test. The only students explicitly exempt from being tested were those who would live off-campus, attend class remotely, and, crucially, would not be interacting with members of NYU's community. By its own logic, the testing requirement implicates safe practices to avoid contracting the virus prior to the start of the semester. The July 30 email further stated that, to have a successful semester, all students must "strictly abide by the new COVID-19 health and safety protocols — wearing a mask, keeping social distance . . ." and warned students that they may face discipline, including interim suspension, for repeated or egregious behavior that threatened the health and safety of others. Given the substantial deference to be accorded to NYU's application of its policies, we find that the July 30 email can rationally be understood to immediately govern student conduct (see Powers, 25 NY3d at 216).
On August 14, 2020, NYU sent all students an email and accompanying video further updating and tightening its COVID-19 policies, to expressly disallow attendance at bars and parties. The August 14 email made clear that [*5]it applied to students everywhere, both on campus and off, and that violations would lead to discipline, including suspension. We find that the August 14 email was effective immediately upon its publication. The email and accompanying video communicate a sense of urgency, and a need for immediate and strong action in light of the pandemic. The directives are written in the present tense and on their face call for immediate action. Accordingly, NYU reasonably interpreted and substantially adhered to its published rules in finding that petitioners' attendance at maskless and nonsocially distanced parties violated those rules (see Bondalapati, 170 AD3d at 490; Lambert, 281 AD2d at 183).
NYU's factual determinations, that petitioners attended parties without masks and without social distancing, were rationally based in the record and not arbitrary and capricious (see Matter of Lipsky v Ferkauf Graduate Sch. of Psychology, 127 AD3d 582 [1st Dept 2015]; Kickertz v New York Univ., 110 AD3d 268, 272 [1st Dept 2013], mod on other grounds 25 NY3d 942 [2015]).
While the penalty of suspension is very harsh, it is not shockingly disproportionate to the offense (see Matter of Quercia v New York Univ., 41 AD3d 295, 297 [1st Dept 2007]). It does not shock the conscience for a university, acting during a pandemic, to enforce rules designed to prevent the spread of the virus with the penalty of suspension. M-4134 — In the Matter of Ashley Storino v New York University
Motion for leave to file an amicus brief, granted.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 1, 2021