Matter of Hansbrough v College of St. Rose (2022 NY Slip Op 05915)

Matter of Hansbrough v College of St. Rose

2022 NY Slip Op 05915

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

534551
[*1]In the Matter of Yvonne Chavez Hansbrough et al., Respondents,
v
The College of Saint Rose et al., Appellants.

Calendar Date:September 7, 2022

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Whiteman Osterman & Hanna LLP, Albany (William S. Nolan of counsel), for appellants.
Smith Hoke, PLLC, Latham (Meredith A. Moriarty of counsel), for respondents.

Reynolds Fitzgerald, J.
Appeals (1) from an order and judgment of the Supreme Court (Peter A. Lynch, J.), entered December 14, 2021 in Albany County, which, among other things, granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for breach of contract, to annul a determination of respondents terminating petitioners' employment, and (2) from an order of said court, entered January 3, 2022 in Albany County, which granted respondents' motion for summary judgment dismissing the breach of contract cause of action without prejudice.
Petitioners are tenured music department professors who were terminated by respondent The College of Saint Rose. The College is a private liberal arts college located in downtown Albany. Following years of lower enrollment and financial hardship, and despite undertaking reasonable alternatives including depleting its cash reserves and unrestricted endowment funds to pay operating expenses, the College continued to experience a budget shortfall. Eventually, the College's board of trustees directed the College to reduce expenses by $6 million. As such, in July 2020, respondents began the process of retrenchment as set forth in the College's Faculty Manual (hereinafter the manual). As part of the process, a joint working group (hereinafter JWG)[FN1] was formed to analyze the College's various programs, and the heads of the various departments were given a time period within which to submit written reports and be heard orally on same.[FN2] After an extensive investigation, the JWG recommended the elimination of 32 undergraduate and graduate programs with the corresponding termination of 33 full-time tenure and tenure-track faculty positions. The recommendation, as relevant here, proposed eliminating three of the four programs within the College's music department,[FN3] including terminating 10 full-time and three visiting faculty positions. In November 2020, the board of trustees approved the recommendation.
Petitioners then pursued an internal appeal with the College's Faculty Review Committee (hereinafter FRC) asserting, among other things, that the College did not follow the policies set forth in the manual. The FRC recommended that the appeal be decided in the faculty members' favor. Thereafter, respondent Marcia White, the College's interim president, rejected most of the FRC's findings and recommended actions, and upheld petitioners' termination. In September 2021, petitioners commenced this hybrid proceeding pursuant to CPLR article 78 and action for breach of contract.
In November 2021, respondents joined issue and moved for summary judgment dismissing the breach of contract cause of action. In a December 2021 order and judgment, Supreme Court severed the breach of contract action and granted the CPLR article 78 petition, finding that respondents had acted arbitrarily and capriciously by failing to follow the procedures set forth in the manual, and annulled respondents' determination to terminate petitioners[*2]. In January 2022, Supreme Court granted respondents' motion for summary judgment on the breach of contract action and dismissed same without prejudice, finding that although respondents failed to follow the procedures set forth in the manual, petitioners had not yet incurred any damages. Respondents now appeal from both the December 2021 order and judgment and the January 2022 order.
A private college, "having accepted a charter and having thus become a quasi-governmental body, can be compelled in
a[ CPLR] article 78 proceeding to fulfill not only obligations imposed upon them by State or municipal statutes but also those imposed by their internal rules" (Matter of Gray v Canisius Coll. of Buffalo, 76 AD2d 30, 33 [4th Dept 1980] [internal citation omitted]; see Klinge v Ithaca Coll.,244 AD2d 611, 613 [3d Dept 1997]; Gertler v Goodgold, 107 AD2d 481, 486 [1st Dept 1985]). Thus, a CPLR article 78 proceeding is the appropriate vehicle for judicial review of matters involving a determination of a professor's benefits and privileges of his or her academic tenure (see Roufaiel v Ithaca Coll., 241 AD2d 865, 867 [3d Dept 1997]; cf. Meisner v Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs., 175 AD3d 1653, 1656 [3d Dept 2019]).
As "the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters" (Maas v Cornell Univ., 94 NY2d 87, 92 [1999]), courts have a restricted role in reviewing such determinations (see Matter of Powers v St. John's Univ. Sch. of Law, 25 NY3d 210, 216 [2015]). Deference should be accorded to a college's determination, "and judicial review is circumscribed to whether the [college] failed to substantially comply with its internal rules and whether its decision was arbitrary [and] capricious or made in bad faith" (Matter of Vengalattore v Cornell Univ., 161 AD3d 1350, 1352 [3d Dept 2018]; see Matter of Kamila v Cornell Univ., 182 AD3d 692, 693 [3d Dept 2020], lv denied 35 NY3d 913 [2020]; Matter of Dalmolen v Elmira Coll., 279 AD2d 929, 932 [3d Dept 2001]).
Initially, the record confirms that, contrary to petitioners' contentions and the finding of Supreme Court, there were no procedural rule violations. Respondents were clear that they were proceeding pursuant to the manual's chapter 2, § E (1), entitled "[a]nticipated program reductions." Additionally, the manual contains no provisions regarding departmental submissions within the retrenchment process. In fact, the only mandate found within the manual, at chapter 2, § E (1) (1.2), is that the College "should consider . . . all reasonable alternatives before resorting to program reductions and any concomitant reductions in personnel."[FN4] Finally, respondents provided timely notice of termination and afforded petitioners an informal appeal process through the FRC, as required by the manual [*3]at chapter 2, § E (1) (1.4), (1.7).
Our examination of the record confirms that Supreme Court did not give appropriate deference to respondents' interpretation of the termination preference — as set forth in chapter 2, § E (1) (1.6) of the manual, requiring the College to apply the preference program wide, rather than department wide — and that Supreme Court improperly concluded that respondents' determination was arbitrary and capricious. "The arbitrary [and] capricious test chiefly relates to whether a particular action should have been taken or is justified" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamoroneck, Westchester County, 34 NY2d 222, 231 [1974] [internal quotation marks and citation omitted]; see Matter of New York City Bd. of Educ. v Ambach, 88 AD2d 1075, 1076 [3d Dept 1982]). "Rationality is what is reviewed under . . . the arbitrary and capricious standard" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamoroneck, Westchester County, 34 NY2d at 231 [citations omitted]).
The plain language of the retrenchment process located in the manual at chapter 2, § E (1) (1.6) states that, "[i]f faculty in the eliminated program must be [terminated], preference will be given to retaining faculty according first to tenure, then to seniority at the College, and then to rank" (emphasis added). Notably the term "program" is used throughout the retrenchment sections, i.e., at chapter 2, § E (1) (1.2) ("The College should consider and, if feasible, attempt all reasonable alternatives before resorting to program reductions and any concomitant reductions in personnel" [emphasis added]); § E (1) (1.3). ("If the elimination of a program results in reduction of personnel" [emphasis added]); § E (1) (1.4) ("Faculty subject to [termination] due to necessary program reductions" [emphasis added]). The record confirms that respondents' determination was supported by a rational basis, was not unreasonable, arbitrary and capricious or made in bad faith (see Matter of Chu v Jones, 151 AD3d 1341, 1343-1344 [3d Dept 2017], lv denied 31 NY3d 903 [2018]); Matter of Hyman v Cornell University, 82 AD3d 1309, 1310 [3d Dept 2011]; Matter of Dalmolen v Elmira Coll., 279 AD2d at 933).
"Supreme Court should not have supplanted the judgment of [respondents] with its own" (Matter of Kinkle-Ansah v New York City Dept. of Educ., 189 AD3d 1048, 1050 [2d Dept 2020]; see Matter of Vengalattore v Cornell Univ., 161 AD3d at 1355). Thus, Supreme Court erred in annulling respondents' determination on the ground that it was arbitrary and capricious (see Matter of Kamila v Cornell Univ., 182 AD3d at 694; Matter of Perinpanayagam v University at Buffalo, 39 AD3d 1220, 1222 [4th Dept 2007]; Matter of Leibowitz v State Univ. of N.Y., 85 AD2d 293, 296 [3d Dept 1982]).
Finally, Supreme Court improperly dismissed the complaint without prejudice. The breach of contract action challenges the propriety [*4]of respondents' determination to terminate petitioners without granting them the preference set forth in the manual. Thus, petitioners are alleging that respondents failed to follow the manual's procedures. Because this claim was properly addressed through the CPLR article 78 proceeding, respondents were entitled to have the complaint dismissed with prejudice (see Doe v State Univ. of N.Y., Binghamton Univ.,201 AD3d 1075, 1077 [3d Dept 2022]; Meisner v Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs., 175 AD3d at 1656; Roufaiel v Ithaca Coll., 241 AD2d at 867). The parties' remaining contentions have been considered and lack merit.
Clark, J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the order and judgment entered December 14, 2021 is modified, on the law, without costs, by reversing so much thereof as granted the petition; petition dismissed in its entirety; and, as so modified, affirmed.
ORDERED that the order entered January 3, 2022 is modified, on the law, without costs, by reversing so much thereof as granted the dismissal of the complaint without prejudice; the complaint is dismissed with prejudice; and as so modified, affirmed.

Footnotes

Footnote 1: The JWG consisted of three administrators and seven faculty members from the representative committee of the faculty.

Footnote 2: It is undisputed that the Music Industry program, part of the music department, submitted its own report after the given time frame.

Footnote 3: The B.A. in Music program, the B.M. in Music Performance program and the B.S. in Music Education program were slated to be eliminated. The B.S. in Music Industry program was left intact, along with its faculty.

Footnote 4: Supreme Court determined that the JWG violated its review procedure by reviewing the Music Industry program's "untimely" report. However, even if we were to agree, as these "rules" were outside the manual, this finding has no relevance with respect to whether the College substantially complied with the manual.