■ In the Matter of DINA LOEBL, Appellant-Respondent, v NEW YORK UNIVERSITY et al., Respondents-Appellants. In the Matter of DINA LOEBL, Appellant, v NEW YORK UNIVERSITY et al., Respondents. [680 NYS2d 495] —Judgment, Supreme Court, New York County (Stanley Sklar, J.), entered February 6, 1997, which granted the petition to the extent of directing the respondents to expeditiously conduct a further tenure review of petitioner in compliance with the University's own rules of tenure review, the recommendations for re-review suggested by Vice President Stedman's July 6, 1994 memorandum, and based on the report of the University Grievance Committee, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

Order, same court and Justice, entered March 9, 1998, which denied petitioner's motion to punish respondents for both civil and criminal contempt based upon their alleged failure to comply with the foregoing judgment, unanimously affirmed, without costs.

It is now settled that courts should not "invade, and only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning" (*Matter of Pace Coll. v Commission on Human Rights*, 38 NY2d 28, 38 [citations omitted]). Where a university has adopted rules or guidelines in such areas, the courts will only intervene where there has not been substantial compliance with those procedures (*see, Tedeschi v Wagner Coll.*, 49 NY2d 652, 660).

Here, despite the 3 to 2 vote of the ad hoc tenure review committee in petitioner's favor, the dean of the School of Education, Ann Marcus, recommended to New York University's President that petitioner, an associate professor in the School's Department of Occupational Therapy, be denied tenure, essentially because of her insufficient record of research and publication in refereed, scholarly journals.

Petitioner then requested a review of the tenure denial by the University's Faculty Council Grievance Committee, which recommended that her tenure application be reconsidered. As a result, University Senior Vice President Harvey J. Stedman, acting for the President, issued a memorandum, dated July 6, 1994, which, based upon the recommendation of the Grievance Committee, asked Dean Marcus "to redo the tenure review before a final determination is made by the President and myself." Although the Stedman memorandum directed that the tenure review be redone, it did not state that it endorsed any of the Grievance Committee's specific criticisms of the manner in which petitioner was reviewed, nor did it direct the dean to adopt any of the Grievance Committee's recommendations as to how the re-review should be conducted.

In October 1994, petitioner was advised of the procedures for the re-review, which were the School of Education Personnel Policies and Procedures for Promotion, Tenure and Termination of Faculty. The School's dean appointed four tenured faculty members, including one of the two tenured members of petitioner's department who had been members of the original tenure review committee. Despite petitioner's objections to the way it was being conducted, the re-review proceeded and resulted in the unanimous recommendation of the re-review committee to deny petitioner tenure, which recommendation was adopted by the University President. This proceeding ensued.

In denying respondents' motion to dismiss the petition, the IAS Court found, in pertinent part, that the tenure re-review process was flawed in that the standards applied did not comport with either the School of Education's ordinary tenure review proceedings or the suggestions of the University's Grievance Committee as, according to the court, adopted in the Stedman memorandum. Notable, the court found, was the failure of the School's dean to include the chair of petitioner's department in the selection of the re-review committee; and the failure to include persons in the committee knowledgeable in the type of non-print media which is petitioner's specialty; and the failure to allow petitioner to demonstrate her computer materials to the committee.

As previously noted, an institution such as New York University is held to the standard of "substantial compliance" in following its own rules and procedures (see, *Tedeschi v Wagner Coll.*, 49 NY2d 652, 660, *supra*; *Matter of Pamilla v Hospital for Special Surgery*, 223 AD2d 508). The failure to consult with petitioner's departmental chair on the make-up of

the re-review committee was not such a substantial deviation from New York University's rules and procedures as to justify the extraordinary relief granted by the court below. The School Policies refer only to "consultation" with the departmental chair in selecting an ad hoc tenure committee, and do not require the dean to defer to the chair's views on who should or should not serve on the committee. It thus appears that the reference to consultation with the departmental chair may be precatory in nature. In this connection, it is noteworthy that, according to Senior Vice President Stedman, there is no University-wide procedure for the dean of a school to consult with the chair of the concerned department in constituting a tenure review committee.

The court below also erred in finding that the re-review was defective to the extent it was conducted in a manner inconsistent with the recommendation of the University Grievance Committee. The only recommendation that was adopted by the Stedman memorandum, and therefore binding on Dean Marcus in conducting the re-review, was "the central recommendation" to redo the tenure review process. Although written in a deferential tone, the Stedman memorandum simply does not adopt, either expressly or by implication, any of the University Grievance Committee's specific criticisms of the prior review or any of the Committee's specific recommendations for the conduct of the re-review (excepting the suggestion that the advice of the School-wide Advisory Committee be better documented in the future).

Inasmuch as it does not appear that there was any substantial procedural defect in the way the re-review was conducted, the determination of the University to deny petitioner tenure may only be disturbed if the University acted in bad faith or if its action was arbitrary and capricious (*Gertler v Goodgold*, 107 AD2d 481, 486, *affd* 66 NY2d 946).

On this record, there is no basis for finding the denial of tenure arbitrary, capricious, or tainted by bad faith. Ample reasons for denial of tenure were given by the minority on the original review committee and by Dean Marcus in the course of the original review, the grievance process, and the re-review. That the majority on the original review committee, the School Grievance Committee, and the University Grievance Committee disagreed with Dean Marcus's assessment of petitioner or with the process she used for such assessment does not render "arbitrary" her views or actions. Under the University's rules, it is the dean who is responsible for making recommendations on the granting of tenure to the University president.

The primary deficiency Dean Marcus perceived in petitioner's qualification for tenure was her failure to publish research or the theoretical basis for her software in peer-reviewed or "refereed" journals. It is clear that Dean Marcus found petitioner's "electronically published" or "non-print media" work insufficient, not because it was in electronic or non-print form, but because it had not been subjected to scrutiny by other scholars. Moreover, Dean Marcus was not dismissive of petitioner's area of specialization (computer applications in occupational therapy), but believed that she needed to theoretically justify, and validate through research, the computer applications she developed.

It is clear from the record that some members of the University faculty disagreed with Dean Marcus on the importance of publication in refereed journals and on the standards and methods to be used in evaluating educational software. Which side is right in this scholarly debate is an academic issue that should not be decided by the courts. As noted above, Dean Marcus was the University officer with the authority to recommend that the President either grant or deny petitioner tenure, and she justified her decision to recommend denial with clearly articulated and coherent reasoning. The final decision on the tenure application was reached after two review processes that were conducted in substantial compliance with applicable University and School procedures.

As for the contempt motion, the record supports the IAS Court's determination that New York University was not guilty of either civil or criminal contempt, and that the delay in conducting the tenure review mandated by the judgment was attributable to New York University's good faith disagreement with petitioner as to the manner in which the judgment required the review to be conducted. Concur—Sullivan, J. P., Nardelli, Mazzarelli, Andrias and Saxe, JJ.