Carole W. BROWN, Appellant,

v.

THE GEORGE WASHINGTON
UNIVERSITY, Appellee.

No. 99–CV–708.

District of Columbia Court of Appeals.

Argued Dec. 17, 2001.
Decided July 11, 2002.

---

Robert A.W. Boraks, Washington, DC, for appellant.

Michael A. Dymersky, with whom Sarah P. Mulkern, Washington, DC, was on the brief, for appellee.

Before STEADMAN, REID and GLICKMAN, Associate Judges.

STEADMAN, Associate Judge.

The George Washington University (appellee) decided not to promote Carole Brown (appellant) or to renew her initial three-year employment contract as an assistant professor. It later removed her from her role as principal investigator in a grant project for the six months remaining in her existing employment term. Appellant filed suit claiming breach of contract for appellee's alleged failure to honor her Faculty Code ("Code") grievance rights during her unsuccessful intrauniversity challenge to these decisions. The trial court granted appellee's motion for summary judgment. We affirm.

## I.

On December 7, 1992, the faculty of the Department of Teacher Preparation and Secondary Education ("Department") voted not to renew appellant's contract and not to promote her. Pursuant to the Code, appellant submitted a grievance to the Executive Committee of the Faculty Senate, alleging several deficiencies in the process that led to the termination vote. The Executive Committee appointed a Hearing Committee ("Committee") to investigate her complaint. The Committee held a three-day hearing in which appellant and eleven other witnesses testified and over 50 exhibits were entered into evidence. After this extensive evidentiary hearing, the Committee issued on March 1, 1995 a six-page single-spaced decision in which it determined that appellant had not demonstrated by clear and convincing evidence that the Department's decision had violated her rights under the Code or that the Department's action was arbitrary and capricious.

Subsequent to appellant's filing of the grievance with the Executive Committee, Peter Smith, Dean of the School of Education and Human Development, on December 20, 1993, removed appellant from the position of principal investigator on the project "Spanning Boundaries: Doctoral Leadership in Early Education." After being removed, appellant added this additional ground to her grievance complaint. The Committee deferred investigation into this new grievance until after it had denied appellant's grievance related to her non-promotion and non-renewal. Then, after choosing not to hold an evidentiary hearing on the principal investigator issue, the Committee on June 23, 1995 denied this grievance as well.[1]

On March 1, 1998, appellant filed a two-count suit alleging breach of contract. The trial court dismissed as time-barred the first count, which challenged appellee's decisions not to promote appellant, not to renew her contract, and to remove her as principal investigator.[2] Then, after first denying appellee's motion for summary judgment on the second count, which focused on the Committee's grievance review of these decisions, the trial court, upon appellee's motion for reconsideration, held a hearing at whose conclusion summary judgment was granted. Only that latter ruling is before us for review, to which we now turn.

## II.

Summary judgment is appropriate when "there is no genuine issue as to any mate-

---

1. Pursuant to the Code, the Committee's decision was appealed to and unanimously sustained by the eight-member Dispute Resolution Committee on February 8, 1996, and forwarded to the President and Board of Trustees for final disposition.

2. Appellant has not appealed this dismissal.

rial fact and ... the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c). Our review of the trial court's grant of summary judgment is *de novo*, and we review the record independently. *See Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C.2001). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). Appellant argues that genuine issues of material fact exist as to whether appellee substantially complied with certain grievance rights contained in the Code that formed part of appellant's employment contract.

■ In the context here, we proceed with particular caution, recognizing that "courts should not invade, and only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning. Where a university has adopted rules or guidelines in such areas, the courts will only intervene where there has not been substantial compliance with those procedures." *Loebl v. New York Univ.*, 255 A.D.2d 257, 680 N.Y.S.2d 495, 496–97 (1998) (citations and internal quotation marks omitted); *see also Kakaes v. George Washington Univ.*, 683 A.2d 128, 135 (D.C.1996). Furthermore, we keep in mind the essential consideration that we are not here reviewing

directly whether the Department violated any employment rights of the appellant. That attack is precluded by the dismissal of her first count. Rather, what is before us is the issue whether, in the grievance process to which appellant consented,[3] the Committee violated any of her employment rights. In this second step of review, we do not ourselves directly determine whether the appellant proved by clear and convincing evidence that she suffered substantial injury from the Department's failure to follow the Code or its arbitrary and capricious action. Rather, the issue before us, as it was before the trial court, is whether the Committee could reasonably conclude on the record before it that she had not met that burden.[4] That is all that her employment rights in the grievance process fairly provide her. We proceed on that basis.

### A.

■ We first deal with the Committee's review of the Department's decision neither to promote appellant nor renew her employment contract. Pursuant to appellant's argument, we focus here upon the provision of the Code[5] that reads as follows:

> In rendering its decision, the Hearing Committee shall not substitute its judgment for that of the maker of the decision being challenged, but rather it shall determine whether the grievant has established by clear and convincing evidence that he/she has suffered a substantial injury resulting from: ... 2) the decision-maker's failure to follow the

---

3. "[T]he procedures for the implementation of this Article [X. Rights, Privileges and Resolution of Disputes under this Code] shall be fully utilized." Code § X(A).

4. Perhaps more precisely put for purposes of summary judgment, this issue is whether a

reasonable jury could conclude on the evidence presented that the Committee acted unreasonably in rejecting appellant's grievance.

5. Procedures for the Implementation of the Faculty Code (1986) § E(3)(c)(7).

Faculty Code, or Faculty Handbook, or other rules, regulations, and procedures established by the University; 3) arbitrary and capricious University action....

Specifically, appellant argues that she demonstrated to the Committee by clear and convincing evidence [6] that the following violations resulted in substantial injury to her: 1) inadequate notice of any deficiencies in her performance that led to the Department's decision; 2) appellant's exclusion from the December 7, 1992, Department meeting that decided her fate; and 3) the decision itself.

 First, appellant alleged that the Department failed to provide her with adequate notice of any deficiencies in her performance prior to its decision.[7] The Committee determined that appellant did not prove by clear and convincing evidence a violation causing substantial injury because appellant had received notice through annual faculty reports and discussions with the Department Chair, Dr. Maxine Freund, and an associate dean. Appellant disputes this, claiming that "[f]rom all that could have possibly appeared to her, [appellant] was progressing satisfactorily as to all the criteria for promotion." But the evidence before the Committee was sufficient to belie this claim. We think that it simply could not be said the Committee unreasonably denied this grievance.[8]

 Second, appellant asserted that her exclusion from the December 7, 1992 meeting violated a Department guideline [9] and caused her substantial injury. According to appellant, "the wording of the provision is crystal clear." The Committee, however, disagreed and noted that the Department had construed the provision as discretionary and that the candidate would be invited to appear only if they felt they wanted to hear additional information "as may appear relevant." This had been the past practice of the faculty, and other candidates seeking promotion were excluded from the same meeting as was appellant. "[T]he objective view of contract interpretation adopted in this jurisdiction requires, in the context of University employment contracts, that the custom and practice of the University be taken into account in determining what were the reasonable expectations of persons in the position of the contracting parties.... '[C]ontracts ... in and among a community of scholars, which is what a university is,' 'are to be read [ ] by reference to the norms of conduct and expectations founded upon them' in a particular manner, unlike, to some degree, contracts made in the ordinary course of doing business." *Howard Univ. v. Best,* 547 A.2d 144, 149, 154 (D.C.1988) *(quoting Greene v. Howard Univ.,* 134 U.S.App. D.C. 81, 88, 412 F.2d 1128, 1135 (1969)). Furthermore, there was no showing that appellant had been prevented from submitting any material

---

6. Clear and convincing evidence is such that "will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re D.I.S.,* 494 A.2d 1316, 1326 (D.C.1985) (citation and internal quotation marks omitted).

7. "Each department or school shall establish procedures for periodically informing faculty members whether they are making satisfactory progress toward promotion." Code § IV(B)(4).

8. See note 4, *supra.*

9. The relevant provision states: "The Chairman, having received such written request with documentation, shall convene at an appropriate time and place the relevant promotion committee and shall invite the faculty member(s) to appear before such committee to provide additional information as may appear relevant."

that she felt was relevant to the promotion or employment renewal issues. What appears to be appellant's real complaint is based on her view of the provision as requiring her presence at the meeting so she could defend herself and answer faculty questions, an expansive interpretation not compelled by the guideline's actual language. All in all, we again think that it could not be said the Committee was unreasonable in rejecting this grievance.

■ Finally, we reach the heart of the matter, the Committee's affirmance of the Department's decision not to promote or rehire. After hearing from seven of the eight faculty members who voted against appellant, the Committee found that the Department faculty had applied the relevant criteria in deciding appellant's case.[10] As the Committee noted, "There is no 'right' to contract renewal [or promotion] in the absence of a specific failure; there is the right to be evaluated according to the stated criteria." Appellant argues to us that the Department unjustifiably evaluated her negatively in two categories, teaching effectiveness and department relations. However, evidence at the grievance proceeding supported the Department's unfavorable rating of appellant in these two categories. There was testimony that appellant's teaching was of average quality and that Drs. Freund and Castleberry believed that appellant was causing tension within the Department. These are quintessential educational issues that go to the very essence of faculty judgments as to qualifications for scholastic employment and promotion.

For each issue under review, the Committee weighed the evidence before it, considered each party's arguments and then rendered a decision. Such deliberate decision making was the opposite of "[a]rbitrary action [which], if it means anything, means action not based on facts or reason." *Washington Gas Light Co. v. Pub. Serv. Comm'n*, 452 A.2d 375, 379 (D.C. 1982) (citation and internal quotation marks omitted), *cert. denied*, 462 U.S. 1107, 103 S.Ct. 2454, 77 L.Ed.2d 1334 (1983). We agree with the trial court that appellee was entitled to judgment as a matter of law on appellant's challenge to the Committee's review of her grievance relating to the Department's decision not to promote or rehire.

**B.**

■ We also agree with the trial court's resolution of appellant's claim that the Committee violated her rights under the Code when it declined to conduct an evidentiary hearing into her removal from the grant project. It is true that the Code contemplates that a hearing will ordinarily be held to determine the merit of a grievance. However, it is worth noting that, as already described, an extensive hearing had been held on appellant's other grievances.[11] The Committee addressed the need for a further hearing as follows:

Although the ... Committee has not conducted a fact finding hearing on this issue [i.e., appellant's current grievance], a great deal of relevant material has already been presented by the parties. In addition to the grievant's complaint,

10. The Department's criteria for promotion (as well as employment contract renewal) are "teaching effectiveness, productive scholarship, participation in professional societies, departmental relationships, public service and university service."

11. While the Committee did not rely on that hearing, it at least provided some background. Appellant in her grievance letter asserted that "her removal was part of a continuing pattern of unfair and illegal treatment of [appellant] by her School and Department."

dated January 26, 1994, the University filed a response, dated February 22, 1994, which addresses the grant issue and references attached exhibits. At the request of the ... Committee both counsel submitted memoranda in November, 1994, which touched upon the grant issue. On March 15, 1995, again at the request of the Committee, counsel submitted memoranda directed solely at the grant issue. From these sources, the ... Committee concludes that the relevant facts in this matter are not contested, and that it may properly base its opinion on these uncontested facts. These memoranda from counsel had been prepared in response to the Committee's request that each party submit a document discussing "(1) what standards govern the review of the decision to remove [appellant] as principal investigator; (2) a short summary of the facts each party could present to show that the decision was either right or wrong; (3) what injury [appellant] suffered, given that she is no longer employed by the University; (4) what relief the ... Committee could grant now given that it has decided that the faculty decisions denying [appellant's] requests for contract renewal and promotion should not be reversed; (5) whether this matter can be disposed of without another evidentiary hearing."

As the Committee noted, unlike her other grievances, no specific criteria or rules existed as to removal of a principal investigator on a grant. Hence, the only basis for Committee review was whether the decision was arbitrary or capricious. Focusing on the immediate circumstances surrounding Dean Smith's decision to terminate, the Committee concluded that "[a]gainst this background, his decision can hardly be characterized as arbitrary or capricious." Most saliently, the Committee expressly noted that even if appellant was able to prove all the facts recited in her counsel's memorandum, the Committee's decision would not change. On this record, we do not think that it could be reasonably concluded that appellant suffered any substantial injury by the Committee's determination that a formal hearing was unnecessary in the circumstances.

The judgment of the trial court is therefore

*Affirmed.*[12]

---

12. Given our resolution of the merits, we need not address appellee's alternative argument that appellant's second count was also barred by the statute of limitations.