*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 17-CV-453

KHALIL ABDUL-AZIM, APPELLANT,

V.

HOWARD UNIVERSITY HOSPITAL, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-799-15)

(Hon. Robert R. Rigsby, Trial Judge)

(Argued January 11, 2019                                        Decided August 1, 2019)

*Sarah McDonough* for appellant.

*Alan S. Block*, with whom *Andrew Butz* was on the brief, for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and EDELMAN, *Associate Judge of the Superior Court of the District of Columbia.**

Opinion for the court by *Associate Judge* MCLEESE.

Dissenting opinion by *Associate Judge* THOMPSON at page 13.

MCLEESE, *Associate Judge*:  Appellant Khalil Abdul-Azim sued his former

employer, appellee Howard University Hospital (HUH), alleging that HUH

---

* Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

discriminated against him on the basis of a perceived disability. The trial court granted summary judgment to HUH. We vacate and remand.

## I.

Except as indicated, the following facts appear to be undisputed. Mr. Abdul-Azim began working at HUH in 1998 as a cardiology technician. He had an excellent performance record. In February 2014, Mr. Abdul-Azim was involved in a dispute with a coworker, Renaldon Perkins, regarding the treatment of a patient. Mr. Perkins received a formal letter of reprimand; Mr. Abdul-Azim was not disciplined. Both men returned to work after the incident.

In April 2014, Mr. Abdul-Azim and Mr. Perkins were involved in a second incident that occurred during a heart-catheterization procedure. Mr. Abdul-Azim's account of that incident was that, believing that Mr. Perkins had omitted a procedure, Mr. Abdul-Azim walked over to Mr. Perkins, placed his hand on Mr. Perkins's shoulder, pointed to the monitor, and instructed Mr. Perkins to correct the omission. Mr. Perkins immediately stood up and left the room. Later that day, Mr. Perkins accused Mr. Abdul-Azim of assault. Both Mr. Abdul-Azim and Mr. Perkins were placed on administrative leave that day pending investigation of the alleged assault.

HUH's corporate representative later testified that HUH believed Mr. Abdul-Azim was the aggressor in both of the incidents with Mr. Perkins.

After this second incident, Mr. Abdul-Azim's supervisor Tawana Brooks recommended that Mr. Abdul-Azim be required to participate in HUH's Employee Assistance Program (EAP) before returning to work. This recommendation was accepted by HUH's senior employee and labor-relations specialist, Candace Dabney-Smith, who expressed concern about the "[p]ossibility of something else driving what appears to be manic behavior."

HUH also referred Mr. Abdul-Azim to the Employee Health Department for a fitness-for-duty evaluation. The evaluation was conducted in May 2014 by Dr. Elizabeth Nolte. Dr. Nolte found that Mr. Abdul-Azim was "hyperactive" and "manic," that he had "poor concentration," and that his behavior during the evaluation was bizarre. Dr. Nolte concluded that Mr. Abdul-Azim was "[n]ot physically able to safely and efficiently perform the essential functions of the job." Subsequently, Dr. Nolte referred Mr. Abdul-Azim for an evaluation for organic disease or psychiatric disorder, noting that Mr. Abdul-Azim "would benefit from psychiatric evaluation" and that he would remain on leave until evaluated and treated. Dr. Nolte testified that she did not know whether or not Mr. Abdul-Azim

was disabled and did not recall whether she had believed that Mr. Abdul-Azim had any particular disorder.

In July 2014, the EAP administrator reported that Mr. Abdul-Azim had completed his EAP sessions and that no further services were recommended. One week later, Mr. Abdul-Azim underwent a psychological evaluation. Dr. Kelurah Comilang noted that Mr. Abdul-Azim was "considered to be fully competent to be released to his[] own custody and does not present active danger to self or others." Mr. Abdul-Azim was released without limitations.

Mr. Abdul-Azim delivered a letter from Dr. Comilang to HUH, dated August 2014, stating that Mr. Abdul-Azim was "currently receiving individual therapy services" and that his treatment began in July. Mr. Abdul-Azim did not send the evaluation records to Dr. Nolte, but he testified that he believed this letter would suffice to demonstrate that he had undergone the required evaluation. In October 2014, Ms. Dabney-Smith sent Mr. Abdul-Azim a letter stating that HUH was "unaware" if the requested psychiatric evaluation had occurred, "and if so, the results." That letter directed Mr. Abdul-Azim to contact Dr. Nolte. Mr. Abdul-Azim and his attorneys repeatedly tried to contact Dr. Nolte and HUH, but they initially got no response.

On November 17, 2014, HUH sent a letter to Mr. Abdul-Azim's attorney stating that Mr. Abdul-Azim could not return to work until he had provided "documentation that he was evaluated and treated by a Psychiatrist and has been cleared for duty by Dr. Nolte." After further correspondence back and forth, HUH sent a letter in December 2014 stating that HUH was considering terminating Mr. Abdul-Azim because he had not produced "documentation verifying completion of a psychiatric evaluation." Mr. Abdul-Azim responded with a letter insisting that he had complied with the conditions on his return to work. HUH terminated Mr. Abdul-Azim in January 2015, stating that the termination was for "failure to comply with Hospital directives for return to duty."

Mr. Abdul-Azim sued HUH, alleging in relevant part that HUH took adverse actions against him based on a perceived disability, in violation of the District of Columbia Human Rights Act of 1977 (DCHRA), D.C. Code § 2-1402.11(a)(1) (2016 Repl.). The trial court granted summary judgment for HUH, concluding that there was insufficient evidence to show that HUH regarded Mr. Abdul-Azim as having a disability. Specifically, the trial court concluded that, despite statements by Dr. Nolte and other HUH employees that Mr. Abdul-Azim's behavior was "manic," "erratic," and bizarre, "[w]hatever difficulty [HUH] perceived [Mr. Abdul-

Azim] as having, it did not perceive his difficulty as limiting the major life activity of work." Finally, the trial court concluded that there was insufficient evidence that HUH's stated reason for terminating Mr. Abdul-Azim -- his failure to submit documentation of his psychiatric evaluation -- was a pretext for perceived-disability discrimination.

## II.

"We review the trial court's grant of a motion for summary judgment *de novo*, and affirm the judgment only if there is no genuine issue of material fact remaining after taking all inferences in favor of the non-moving party." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1037 (D.C. 2014). Applying that standard, we reverse.

## A.

We conclude that there was a genuine dispute of material fact as to whether HUH perceived Mr. Abdul-Azim as disabled. As relevant here, the DCHRA prohibits an employer from discriminating against an employee wholly or partially on the basis of an actual or perceived disability. D.C. Code § 2-1402.11(a)(1). The

DCHRA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment."  D.C. Code § 2-1401.02(5A) (2016 Repl.).  Under the DCHRA, working is a major life activity. *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 584 (D.C. 2001).

Dr. Nolte concluded that Mr. Abdul-Azim was hyperactive, manic, and exhibiting bizarre behavior to the point that he was "[n]ot physically able to safely and efficiently perform the essential functions of [his] job."  We recognize that "a person is not disabled under the DCHRA if all that he or she can show is an inability to work at a particular job, as opposed to working generally."  *Woodland v. Dist. Council 20*, 777 A.2d 795, 798 (D.C. 2001).  But nothing in Dr. Nolte's conclusions was tied to the particular demands of Mr. Abdul-Azim's position.  We conclude that a reasonable factfinder could infer that Dr. Nolte believed that Mr. Abdul-Azim was disabled.  We are not persuaded by HUH's arguments to the contrary.

First, HUH points to Dr. Nolte's deposition testimony, which HUH characterizes as that "Dr. Nolte did not perceive or believe that [Mr. Abdul-Azim] suffered from a disability" and did not diagnose Mr. Abdul-Azim with a disability. HUH seems to overstate Dr. Nolte's deposition testimony, which in fact was that she

did not know whether or not Mr. Abdul-Azim was disabled and did not recall whether she had believed that Mr. Abdul-Azim had any particular disorder. In any event, a reasonable factfinder could credit Dr. Nolte's written findings over her deposition testimony.

Second, HUH argues that an employer may send an employee for an evaluation without necessarily perceiving the employee as disabled within the meaning of the DCHRA. We do not disagree. In the present case, however, Dr. Nolte did not simply send Mr. Abdul-Azim off to be evaluated. She also made written findings that in our view could reasonably be understood to demonstrate a belief that he was disabled.

For its part, the dissent relies on the theory that an employer cannot perceive an employee as disabled if the employer's view rests on the recommendation of a physician. *Infra* at 16-19. We do not view that as an appropriate basis upon which to affirm the trial court's grant of summary judgment. HUH has never relied upon that theory, the trial court did not consider it, and Mr. Abdul-Azim has had no opportunity to brief or otherwise address it. Our cases make clear that, in such circumstances, it would not be "procedurally fair" to affirm a grant of summary judgment on that basis. *Bartel v. Bank of Am. Corp.*, 128 A.3d 1043, 1048 (D.C.

2015) (declining to affirm grant of summary judgment on alternative ground that trial court did not decide, no one had argued, and parties had not briefed); *see, e.g.*, *Jaiyeola v. District of Columbia*, 40 A.3d 356, 372 (D.C. 2012) (although court has discretion to affirm grant of summary judgment on alternative grounds not decided by trial court, court has "cautioned that it usually will be neither prudent nor appropriate for this court" to do so) (internal quotation marks omitted). Our unwillingness to affirm on that basis is increased by our uncertainty about the dissent's theory and its potential application to the alleged circumstances of this case. For example, it is not obvious why the existence of medical advice is logically relevant to whether an employer perceived an employee as disabled. Rather, the existence of such advice seems logically more relevant to, though not necessarily always dispositive of, whether an employer unlawfully discriminated by acting on the basis of such advice. *See generally, e.g.*, *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 975 n.2 (7th Cir. 2000) ("[A] company may not be able to escape liability in situations where a plaintiff can demonstrate that the company's reliance on its doctor's medical determination was unreasonable or in bad faith."). For the foregoing reasons, we decline to affirm on the basis of the dissent's theory. If HUH attempts to rely on the theory on remand, we leave it to the trial court to address the matter, including any dispute about whether the theory was timely raised.

Because we conclude that a reasonable factfinder could find that Dr. Nolte believed that Mr. Abdul-Azim was disabled, we need not and do not address Mr. Abdul-Azim's suggestion at oral argument that a claim of perceived-disability discrimination under the DCHRA can properly rest on a "perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (2017).

**B.**

We also conclude that there is sufficient evidence to permit a reasonable factfinder to conclude that the stated basis for Mr. Abdul-Azim's termination -- "failure to comply with Hospital directives for return to duty" -- was a pretext for perceived-disability discrimination.  The record is unclear as to exactly what HUH expected Mr. Abdul-Azim to provide to it.  At various points, HUH referred to results of a psychiatric evaluation; documentation of evaluation and treatment and clearance for work by Dr. Nolte; and documentation verifying completion of a psychiatric evaluation.  Mr. Abdul-Azim submitted a letter from Dr. Comilang stating that Mr. Abdul-Azim was "receiving individual therapy services" and undergoing "treatment," which Mr. Abdul-Azim believed conveyed that he had been examined.  There also was evidence that Mr. Abdul-Azim and his lawyers made

numerous attempts to contact Dr. Nolte about Mr. Abdul-Azim's return to work, but Dr. Nolte never responded.

It is true, as HUH points out, that Dr. Comilang's letter did not explicitly say that Mr. Abdul-Azim had been evaluated. The letter surely implied as much, though, given the implausibility of a psychologist treating a patient without evaluating the patient first. It is also true that Mr. Abdul-Azim did not submit verification that his treatment had been completed. It does not appear, however, that HUH ever communicated that precise requirement to Mr. Abdul-Azim. Finally, it is true that Mr. Abdul-Azim did not submit verification that he had been cleared by Dr. Nolte to return to work. But Mr. Abdul-Azim submitted evidence that he and his attorneys had been trying to contact Dr. Nolte and she would not respond.

The dissent reasons that Mr. Abdul-Azim's response to HUH was inadequate for a different reason: HUH required the involvement of a psychiatrist, but Mr. Abdul-Azim was seen instead by a psychologist. *Infra* at 19-20. If that was the problem with Mr. Abdul-Azim's response to HUH, HUH did not make that clear to Mr. Abdul-Azim before terminating him. HUH also did not seek summary judgment on that basis, instead using the terms "psychologist" and "psychiatrist" interchangeably in its summary-judgment filings. The dissent quotes the trial court's

statement in granting summary judgment that "[t]here may be some overlap between a psychiatric evaluation and sessions of therapy, but [Mr. Abdul-Azim] tried to pass off therapy sessions as a psychiatric evaluation." *Infra* at 20. That statement is at best ambiguous, though, because it more naturally suggests that the trial court was focused on the difference between therapy and an evaluation, not on the difference between psychiatrists and psychologists. In this court, moreover, HUH has not clearly argued for affirmance based on a distinction between psychiatrists and psychologists. Rather, HUH continues to apparently use the terms interchangeably and to focus on the absence of explicit evidence of an evaluation and completion of treatment.

In our view, a reasonable factfinder could conclude that Mr. Abdul-Azim was terminated not for a failure to follow proper procedures in his effort to return to work but rather because HUH perceived that he was disabled.

For the foregoing reasons, we conclude that the trial court's stated reasons do not support a grant of summary judgment to HUH. We therefore vacate the judgment of the Superior Court and remand for further proceedings.

*So ordered.*

THOMPSON, *Associate Judge*, dissenting: For a plaintiff to avoid summary judgment, "there must be some 'significant probative evidence tending to support the complaint' . . . ." *Lowrey v. Glassman*, 908 A.2d 30, 36 (D.C. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Brown v. George Washington Univ.*, 802 A.2d 382, 385 (D.C. 2002) (quoting *Anderson*, 477 U.S. at 249–50) (citations omitted). The question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 251 (footnotes omitted) (emphasis in original). "Although we must view the record in the light most favorable to the non-moving party, the mere existence of a scintilla of evidence will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008) (internal quotation marks, brackets, and ellipses omitted).

I would affirm the grant of summary judgment to Howard University Hospital (the "Hospital") because I agree with the Superior Court that there is in the summary judgment record no significantly probative evidence to support Mr. Abdul-Azim's

claim that the Hospital placed him on leave and (eventually) terminated him because it perceived him as having a disability.

As the Superior Court noted, the undisputed fact is that the Hospital placed Mr. Abdul-Azim on leave in order to investigate his alleged assault on his co-worker, and then required him to participate in Employee Assistance Program ("EAP) counseling to avoid a "possible escalation to workplace violence."[1] The evidence that the Hospital's Senior Employee and Labor-Relations Specialist, Candace Dabney-Smith, expressed concern about Mr. Abdul-Azim's "erratic" behavior and about the "[p]ossibility of something else driving what appears to be manic behavior" by Mr. Abdul-Azim did not raise a jury question about perceived-disability discrimination. Even if Ms. Dabney-Smith or others at the Hospital believed that Mr. Abdul-Azim had an impairment of some sort, the Superior Court correctly noted that under the District of Columbia Human Rights Act, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that [such a] perception caused the adverse employment action." *Teru Chang v. Inst. For Pub.-*

---

[1] As the Superior Court observed, this was a "reasonable response to an alleged assault on a co-worker."

*Private P'ships, Inc.*, 846 A.2d 318, 325 (D.C. 2004) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)).

In concluding that Mr. Abdul-Azim is entitled to get to a jury on his perceived-disability claim, the majority opinion focuses on the following notations made by Dr. Nolte about Mr. Abdul-Azim when she filled in the "Problem List" box on a "Physical Examination Form" she completed as part of Mr. Abdul-Azim's fitness-for-duty examination: "hyperactive/manic/poor concentration" and "uncontrolled HTN [presumably, shorthand for "hypertension"]." Dr. Nolte also checked a box next to "Not physically able to safely and efficiently perform the essential functions of the job because" (without filling in a reason). Dr. Nolte's use of slashes suggests that (as she testified in her deposition) she had not reached a definite view as to what condition or impairment, if any, Mr. Abdul-Azim might have.[2] But, more to the point, Dr. Nolte's assessment and her recommendation that Mr. Abdul-Azim be

---

[2] Another of Dr. Nolte's notes states that Mr. Abdul-Azim "said that another employee left b/c he was bipolar too." This may show that Mr. Abdul-Azim believed he had that condition, but it does not show that Dr. Nolte or the Hospital had that belief. Further, neither the Physical Examination Form nor anything else in the record reflects that Dr. Nolte (or, as the Superior Court found, anyone else at the Hospital) thought that Mr. Abdul-Azim had PTSD, which is what his Second Amended Complaint alleged.

evaluated for "organic disease or psychiatric disorder" cannot form the basis of a perceived-disability claim even if she believed that Mr. Abdul-Azim was disabled.

As the Superior Court noted in its order, District of Columbia courts have "considered decisions construing the [Americans with Disabilities Act ("ADA")] as persuasive in our decisions construing comparable sections of the [District of Columbia Human Rights Act]." *Hodges v. District of Columbia*, 959 F.Supp.2d 148, 153 (D.D.C.2013). Regarding the perceived-disability discrimination provision of the ADA, the federal courts have recognized that "[t]his provision is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995) (internal quotation marks omitted) (quoting *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 279, 285 (1987) (noting that Congress "acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment," and that it extended coverage to individuals who are regarded as having a physical or mental impairment because those persons' ability to work can be limited as a result of negative reactions to the perceived impairment, with the intent to replace "reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments").

Given that rationale for the extension of coverage to perceived-disability claims, courts have reasoned that when an employee's termination or other adverse employment action "is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." *Kozisek v. County of Seward*, 539 F.3d 930, 935 (8th Cir. 2008) (perceived-disability claim brought under the ADA failed because employer's insistence upon the employee's completing inpatient alcohol treatment as a condition of keeping his job was not based upon misconceptions, myths, or stereotypes about his possible drinking problem, but on a licensed mental health therapist's recommendation that the employee complete such treatment after a very serious incident); *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006) (because the employer, in imposing lifting restrictions on the employee, followed the recommendations of occupational medicine specialist to whom company physician had referred the employee, the record did not create a genuine issue of material fact as to whether the employer perceived the employee as disabled); *see also Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 86 (1st Cir. 2008) (citing *Breitkreutz* with approval); *Butler v. Greif Bros. Serv. Corp.*, 231 F. App'x 854, 858 n.3 (11th Cir. 2007) (same).

In light of the reasoning of the cases cited above, I believe we should conclude that Dr. Nolte's assessment based on her medical judgment and her recommendation that Mr. Abdul-Azim be required to undergo a psychiatric evaluation before returning to work does not as a matter of law establish that she "regarded" Mr. Abdul-Azim as having a disability within the meaning of D.C. Code § 2-1401.02(5A) (2016 Repl.).  Accordingly, I cannot find error in the Superior Court's determination that there is insufficient evidence in the summary judgment record to conclude that Dr. Nolte recommended a psychiatric evaluation because she perceived him to have a disability.[3]  And since Dr. Nolte's assessment is the only evidence of perceived disability Mr. Abdul-Azim proffered, the Superior Court did not err in entering summary judgment for the Hospital.[4]

---

[3]  My colleagues attach some significance to Mr. Abdul-Azim's assertion that he and his attorneys repeatedly tried to contact Dr. Nolte, but she did not respond. But other than a September 18, 2014, email written by Dr. Nolte stating that Mr. Abdul-Azim had "stopped by Employee Health . . . wanting to know if he could have his annual screen done" (which the email states Employee Health does not do when employees are out on leave), the only evidence of that is statements to that effect by Mr. Abdul-Azim's lawyers, who seem to have been the ones who tried repeatedly to contact Dr. Nolte (and who received a response from the Hospital's lawyers).  I do not think the lawyers' assertion supports an inference that Dr. Nolte's recommendation that Mr. Abdul-Azim be required to undergo a psychiatric evaluation was based on anything other than her medical judgment.

[4] The undisputed fact that the Hospital referred Mr. Abdul-Azim to Dr. Nolte for a fitness-for-duty examination also will not support a perceived-disability discrimination claim.  *See, e.g.*, *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001) (fact that employer required employee to submit to an independent medical examination before he could be reinstated was insufficient to

I also take issue with the majority conclusion that "there is sufficient evidence to permit a reasonable factfinder to conclude that the stated basis for Mr. Abdul-Azim's termination — 'failure to comply with Hospital directives for return to duty' — was a pretext for perceived-disability discrimination." Mr. Abdul-Azim confirmed during his deposition that he understood that a psychiatric evaluation was a requirement for his return to work and that he "had to provide [the Hospital] with written confirmation that [he] completed [a] psychiatric evaluation, in addition to the EAP counseling in order . . . to return to work." The record thus supports the Superior Court's observation that Mr. Abdul-Azim "knew what he had to do to keep his job: provide [the Hospital] with documentation of his psychiatric evaluation, a

---

demonstrate that employer regarded employee as disabled where exam was necessary to establish the employee's fitness for the work at issue; reasoning that the employer's "request for such an appropriately-tailored examination only establishes that the employer harbors doubts (not certainties) with respect to an employee's ability to perform a particular job" and that "[d]oubts alone do not demonstrate that the employee was held in any particular regard"); *Krocka v. City of Chi.*, 203 F.3d 507, 515 (7th Cir. 2000) (rejecting employee's claim that employer's requirement that he undergo a medical evaluation was evidence that the employer regarded him as disabled); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999) ("[R]equesting a mental evaluation does not indicate that an employer regards an employee as disabled[.]"); *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998) (employer's request for mental examination of an employee who had exhibited unusual and troubling behavior did not establish that the employer regarded the employee as disabled; reasoning that "[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims . . .").

task he never completed." What Mr. Abdul-Azim submitted to the Hospital, however, was a letter from a clinical psychologist confirming that he was receiving individual therapy services within a neuropsychology clinic. As the Superior Court found, "[t]here may be some overlap between a psychiatric evaluation and sessions of therapy, but [Mr. Abdul-Azim] tried to pass off therapy sessions as a psychiatric evaluation[.]" As the Hospital argues, the letter Mr. Abdul-Azim presented from his psychologist "was insufficient for [him] to return to work [] because it did not certify completion of a psychiatric evaluation or treatment." As the Hospital's action in terminating Mr. Abdul-Aim was "independently justified for [a] nondiscriminatory reason," *Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1, 29 (D.C. 1987), I see no basis on which a jury could conclude that the Hospital's cited reason for the termination was a pretext for perceived-disability discrimination.[5]

---

[5] *Cf. Patton v. Ingalls*, No. 1:15cv297-HSO-JCG, 2016 U.S. Dist. LEXIS 100215, *7–9 (S.D. Miss. 2016) ("It is undisputed that Plaintiff was notified by telephone on June 24, 2015, that compliance with the mandatory referral to the EAP was a condition of her continued employment and that she must comply by June 26, 2015, or she would be terminated. . . . It is further undisputed that Plaintiff let the June 26, 2015, deadline pass without taking any action. . . . . [The employer] terminated Plaintiff four days after this deadline, when Plaintiff still had not contacted [the employer] or the EAP. . . . Because the competent summary judgment evidence demonstrates that Plaintiff was terminated for failure to participate in the EAP, a reasonable jury could not conclude that Plaintiff was terminated because of a disability.").

For the foregoing reasons, I respectfully dissent.